David MISWALD and Gail Miswald, Petitioners-
Respondents,†

v.

WAUKESHA COUNTY BOARD OF ADJUSTMENT, Respondent-
Appellant.

Court of Appeals

*No. 95–1642. Submitted on briefs March 1, 1996.—Decided
May 1, 1996.*

(Also reported in 550 N.W.2d 434.)

†Petition to review filed.

401

On behalf of the respondent-appellant, the cause was submitted on the briefs of *William J. Domina,* assistant corporation counsel.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *James W. Hammes,* of *Cramer, Multhauf & Hammes* of Waukesha.

Before Brown, Nettesheim and Snyder, JJ.

NETTESHEIM, J. The issue on appeal is whether the Waukesha County Board of Adjustment correctly calculated the allowable size of David and Gail Miswald's proposed residence on the shores of Lake Okauchee in the Town of Oconomowoc, Waukesha County, when considering the Miswalds' variance request. The board based its calculation solely on the size of the Miswalds' residential lot, to the exclusion of two other nearby lots which the Miswalds also own. Based on this computation, the board granted the Miswalds a variance, but not to the extent sought by the Miswalds.

The circuit court reversed the board's ruling and remanded the matter back to the board. The court held that the county's prior imposition of a deed restriction, requiring the three Miswald parcels to be sold as a single unit, mandated the board to consider the three parcels as one for purposes of the requested variance.

We conclude that the board's action was within its jurisdiction and decided under a correct theory of law. We also conclude that the action was not arbitrary, oppressive or unreasonable and was supported by the evidence. Accordingly, we reverse the circuit court's order and confirm the board's decision.

## FACTS

The Miswalds are the owners of three separate parcels of land located on and near Lake Okauchee in Kraenzlein's Subdivision in the Town of Oconomowoc, Waukesha County. The first lot fronts the lake, has a total area of 4015 square feet and is the site of the Miswalds' present one-story, 730 square foot ranch home. Forest Bay Road runs along the back of this lot.

The second lot is an off-lake parcel located behind the Miswalds' lakefront lot on the other side of Forest Bay Road. This lot is a small, vacant, fifteen- by twenty-foot parcel.

The third lot is a noncontiguous off-lake parcel, also located on the other side of Forest Bay Road. This lot lies approximately two hundred feet west of the lakefront parcel, has an average width of fifty feet, an average depth of 164.25 feet and a total area of 8212 square feet, including a road right-of-way. The combined area of all three parcels is 12,227.5 square feet.

In 1986, the board approved the Miswalds' request for a variance to construct a detached garage on the third lot. The variance was necessary, in part, because the proposed garage would be located on a lot which did not include the Miswalds' principal residential building. However, as a condition of the variance grant, the board imposed a deed restriction requiring that the Miswald lots could not be sold separately.[1]

---

[1] The parties' briefs represent that the 1986 deed restriction applies to all three lots owned by the Miswalds. We are not certain that this is so. The actual 1986 variance proceedings are not part of the record. Instead, this event is summarized in the recommendation of the board's staff prepared in response to the Miswalds' present variance request. This summary notes that the variance for the garage lot was required because the lot did not have a principal building. The summary then notes the deed

This brings us to the current matter. On June 6, 1994, the Miswalds submitted a proposal to the board to raze their existing ranch home and construct a twenty-eight by forty-two foot two-story residence on the lakefront lot, with each floor approximately 1200 square feet in area. This proposal required the Miswalds to obtain a variance from the floor area ratio, open space, road setback and shore setback provisions of the Waukesha County Shoreland and Floodland Protection Ordinance. The ordinance, inter alia, requires open space square footage of 10,000 square feet and a floor area ratio maximum of 15% of the lot size.

The board's staff analyzed the Miswalds' proposal and prepared a recommendation. Based on the size of the Miswalds' residential lakefront lot, the staff calculated that the Miswalds' proposal produced: (1) 3098 square feet of open space, whereas the ordinance required 10,000 square feet; and (2) a floor area ratio of 45.7%, whereas the ordinance permitted a maximum of 15%. Alternatively, based on the combined size of all the Miswald lots, the staff calculated that the proposal produced: (1) open space of 10,470.5 feet, in compliance with the ordinance; and (2) a floor area ratio of 21.9%, still in excess of the maximum permitted by the ordinance.

The staff recommended a partial grant of the Miswalds' variance request with various conditions. These included restricting the proposed home to a single-story structure of thirty feet by forty feet with an

---

restriction that "the two lots not be sold separately." It strikes us that this language might apply only to a sale of the garage lot and the residential lakefront lot, but not to the small, vacant lot. Nonetheless, because the parties assume and represent that the deed restriction applies to all three lots, we will decide this case on that premise.

exposed basement with a finished living area. On July 7, 1994, the board, with exceptions not relevant here, adopted the staff recommendation. Neither the staff recommendation, the board's decision nor the parties' briefs set out the floor area ratio resulting from this approval.

The Miswalds requested a reconsideration of the board's decision, and the matter was placed on the board's calendar for the next meeting. Subsequently, the Miswalds submitted a modified proposal for a twenty-eight by forty-two foot three-story home consisting of an unfinished, exposed basement, 1176 square feet on the first floor and 798 square feet on the second floor.

Again, the board's staff conducted an analysis of the Miswalds' new request and issued a further recommendation. Based only on the size of the residential lot, the Miswalds' new proposal produced the same open space area as their original proposal: 3098 square feet versus the 10,000 square feet required by the ordinance. In addition, the new proposal produced a floor area ratio of 36%, still in excess of the 15% maximum permitted by the ordinance. Alternatively, by combining all the lots, the open space area was 10,507 square feet, in compliance with the ordinance; however, the floor area ratio was 18.5%, still in excess of that permitted by the ordinance.

Again, the staff recommended a partial grant of the Miswalds' modified variance request. The staff recommended a one-story thirty- by forty-foot structure with an exposed basement. Unlike the earlier recommendation, this recommendation set out the resulting open space and floor area ratio. Limiting the calculation to only the residential lot size, the staff's

recommendation produced 4100 square feet of open space and a floor area ratio of 22.6%.

The board, however, approved a twenty-five by forty-foot two-story structure with an exposed basement. On the basis of the size of the residential lot, this produced a floor area ratio of 28.3% and open space of 4300 square feet. On this basis, the board partially granted the variance.

On September 30, 1994, the Miswalds filed a certiorari appeal in the circuit court claiming that the board erred when it refused to factor all three lots into the computation. The circuit court agreed with the Miswalds. The court concluded that because the board had imposed the prior deed restriction requiring the Miswalds' three lots to be sold as a unit, the board was required to combine the Miswalds' three lots for the purpose of measuring the floor area ratio. The court remanded the matter back to the board for further consideration under this directive. The board appeals.

DISCUSSION

█

When conducting statutory certiorari judicial review, our standard of review of the circuit court's ruling is de novo. *Nielsen v. Waukesha County Bd. of Supervisors,* 178 Wis. 2d 498, 511, 504 N.W.2d 621, 626 (Ct. App. 1993). We accord a presumption of correctness and validity to the decision of the board when reviewing a decision by statutory certiorari. *Id.*

█

The board first argues that the Miswalds did not file their appeal within thirty days of the board's deci-

sion as mandated by § 59.99(10), STATS.[2] It reasons that the thirty-day time limit under the statute commenced when the board first partially approved the variance on July 7, 1994. The board maintains that the issue of whether the Miswalds could combine their three lots was resolved at that meeting. The Miswalds respond that their appeal is timely because the matter was not resolved with finality until the board's decision of September 14, 1994. We agree with the Miswalds that this appeal is timely taken from the latter board decision.

We reject the board's argument that it reached a definite and final decision at the July hearing because the subject was raised and discussed at that hearing. Unlike the board's September decision, the July decision did not expressly say that the calculation was limited to the residential lot only. More importantly, however, the July decision clearly stated that the board's decision was tentative and conditional. In its final sentence, the decision states:

> NOTICE: The approval of the decision contained on this sheet may be taken up at the next scheduled Board of Adjustment Hearing. Consequently, the language contained herein may be subject to change or modification.

---

[2] Although the record does not demonstrate that the board raised this issue in the circuit court and could be held to waiver, we nonetheless choose to address it. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980). Section 59.99 (10), STATS., provides: "CERTIORARI. Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment . . . may, within 30 days after the filing of the decision in the office of the board, commence an action seeking the remedy available by certiorari."

Thereafter, the board subsequently issued a notice of public hearing to be held on August 10, 1994, to further address this matter. It is unclear from the record whether this action was a routine follow-up to the board's prior conditional order or whether it was prompted by the Miswalds' request for reconsideration. In either event, it is clear that the board did not see its July decision as the final word on the matter.

In contrast, the September 14, 1994, board decision speaks directly to the calculation issue. And, although this decision also contains the same concluding language indicating that the matter might be taken up at a further hearing, the record does not reveal that any further hearings concerning this issue occurred.[3] Since the Miswalds filed their appeal on September 30, 1994, within the thirty-day time limit under § 59.99(10), STATS., we address the appellate issue on the merits.

The common law certiorari standard of review applies to the circuit court's review of a decision by a county board of adjustment under § 59.99(10), STATS., when the court either does not take evidence or takes evidence that is substantially the same as that taken by the board. *Klinger v. Oneida County,* 149 Wis. 2d 838, 843, 845, 440 N.W.2d 348, 350, 350-51 (1989). Under this standard, a circuit court's review is limited to: (1) whether the board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in ques-

---

[3] If anything, this might suggest that the Miswalds' appeal was too early, rather than too late.

tion. *Id.* at 843, 440 N.W.2d at 350. We consider these factors as well. *See Arndorfer v. Sauk County Bd. of Adjustment,* 162 Wis. 2d 246, 254, 469 N.W.2d 831, 834 (1991).

■

In addition, a reviewing court must accord a presumption of validity and correctness to a decision by a board of adjustment. *Id.* at 253, 469 N.W.2d at 833. Thus, the Miswalds carry the burden of overcoming this presumption of correctness. *See id.*

The Miswalds do not dispute the accuracy of the board's floor area ratio calculation. Rather, they dispute the board's decision to make that calculation solely on the basis of the size of their residential lot and to the exclusion of their other two parcels.[4]

We first observe that neither the circuit court's decision nor the Miswalds' brief cites to any case law which holds that a condition imposed by a zoning board of adjustment in a prior unrelated variance proceeding governs the present and different variance request.

Second, and more importantly, the 1986 deed restriction served a different purpose than the zoning restrictions at issue in the present proceeding. The deed restriction was a condition attached to the board's grant of a variance to the Miswalds, permitting them to construct a garage on a separate, noncontiguous parcel which did not contain a principal building. The board obviously did not want to be confronted with a future situation in which the principal residential lot, but not the garage lot, had been sold. That would result in the

---

[4] The Waukesha County Shoreland and Floodland Protection Ordinance defines a "lot." This definition allows, in some instances, separate parcels to be considered as a single lot. The circuit court's decision does not rest on this provision. Neither does the Miswalds' appeal.

garage no longer serving as an accessory structure. Such would be illegal under the ordinance, compelling the zoning authorities to take steps to eliminate the violation. The deed restriction avoided this potential state of affairs.

That concern, however, is far different from the building size and open space requirements which confronted the board in this case. These requirements serve the purpose of the ordinance which is to promote the health, safety, convenience and environmental integrity of the area. *See* WAUKESHA COUNTY, WIS., SHORELAND AND FLOODLAND PROTECTION ORDINANCE § 1.02.

When considering a variance request, the zoning authority is to make a discretionary call on a case-by-case basis as to whether, and if so by how much, the governing rules are to be relaxed. *See Snyder v. Waukesha County Zoning Bd. of Adjustment*, 74 Wis. 2d 468, 475-76, 247 N.W.2d 98, 103 (1976). That determination should not be governed by a condition which the board imposed in a prior unrelated proceeding in which the considerations at issue were markedly different from those in the present proceeding. As such, the board proceeded on a correct theory of the law and it could reasonably make the order challenged in this case.

We also conclude that the board's decision was not arbitrary, oppressive or unreasonable. The circuit court disagreed, noting that the Miswalds had made a "significant sacrifice" as a result of the 1986 deed restriction. True enough. However, the court's statement overlooks that the Miswalds had also received a substantial benefit as a result of that proceeding. They received a variance from the provisions of the zoning code which otherwise barred the construction of an

accessory building on a separate, noncontiguous parcel. In addition, the court's reasoning overlooks what we have already held: the deed restriction served one purpose while the zoning restrictions governing building size serve others.

Nor was the board's action arbitrary, oppressive or unreasonable because the board had, in certain prior instances, combined multiple, noncontiguous lots when considering variance requests by other residents. Of the three examples offered by the Miswalds, two were requests for the construction of boathouses, not a primary residence. We presume as correct and valid the board's reasoning that the construction of a principal residence presents planning issues that may be more compelling than those presented by proposed accessory buildings. *See Arndorfer,* 162 Wis. 2d at 253, 469 N.W.2d at 833. In fact, that may explain the board's full grant of the garage variance to the Miswalds in 1986.

The third example offered by the Miswalds did concern a residence variance application. In that case, the board determined that it did not have to grant the floor area ratio variance because it combined two lots owned by the resident. However, we reject the Miswalds' argument that the board was bound to follow this example for three reasons.

■■

First, if the Miswalds are correct, the board's authority to exercise its discretionary powers on a case-by-case basis would be substantially curtailed. Moreover, if the board's action in the prior case was incorrect, the Miswalds' argument would forever hold the board to perpetuate it. That is not the law. A zoning authority may correct a prior mistake. *See Smart v. Dane County*

*Bd. of Adjustment*, 177 Wis. 2d 445, 455, 501 N.W.2d 782, 785 (1993).

Second, although past practice can sometimes govern present practice, we are unable to say that this one example represents the requisite "practical construction over an *extensive* period by the officer or administrative agency charged with [administering the law]." *See State ex rel. B'nai B'rith Found. v. Walworth County Bd. of Adjustment*, 59 Wis. 2d 296, 305, 208 N.W.2d 113, 118 (1973) (emphasis added; quoted source omitted).

■

Third, although we are not presented with extensive evidence relating to this example, two distinctions are immediately apparent. First, the additional lot which the board factored into the calculation could not be developed because it was located in a floodplain. In this case, we are not advised as to whether the garage lot could be developed, but it clearly is not located in a floodplain. Second, even excluding the additional lot from the calculation in the prior case, the applicant there at least satisfied the open space requirement of the ordinance. In this case, the Miswalds satisfied neither the open space nor the floor ratio requirements. These differing factors may well explain the board's differing rulings in these cases.

CONCLUSION

We hold that the board acted within its jurisdiction and proceeded under a correct theory of law in partially granting the Miswalds' variance request. We further hold that the board's decision is a rational exercise of considered judgment, is not arbitrary or capricious, and is reasonably supported by the evidence. We

reverse the circuit court's ruling to the contrary and confirm the board's decision.

*By the Court.*—Order reversed.