Anita ROBERTS, Dean Anhalt,
David Korinek, Lynn Korinek and
Citizens Opposing Windturbine Sites,
Plaintiffs-Appellants,

v.

MANITOWOC COUNTY BOARD OF ADJUSTMENT and
Navitas Energy, Inc., Defendants-Respondents.

Court of Appeals

*No. 2005AP2111. Submitted on briefs April 6, 2006.
—Decided July 5, 2006.*

2006 WI App 169

(Also reported in 721 N.W.2d 499.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Mark B. Hazelbaker* of *Hazelbaker & Associates, S.C.* of Madison.

On behalf of the defendant-respondent Manitowoc County Board of Adjustment, the cause was submitted on the brief of *Susan E. Lovern* of *von Briesen & Roper, S.C.* of Milwaukee.

On behalf of the defendant-respondent Navitas Energy, Inc., the cause was submitted on the brief of *Eric M. McLeod* and *Michael A. Hughes* of *Michael Best & Friedrich LLP* of Madison.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. SNYDER, P.J. Anita Roberts, Dean Anhalt, David Korinek, Lynn Korinek and Citizens Opposing Windturbine Sites (together, Roberts) appeal from an order dismissing their claims and affirming the Manitowoc County Board of Adjustment's decision to issue a conditional use permit to Navitas Energy, Inc. to build a forty-nine-turbine wind energy park. Following the decision of the Board, Roberts sought certiorari review in circuit court. The circuit court held that the Board properly granted the conditional use permit to Navitas. On appeal, Roberts contends that the Board applied the wrong legal standard, employed unfair time limits to minimize public input, and made a decision unsupported by the evidence. We disagree and affirm.

## BACKGROUND

¶ 2. On October 27, 2004, Navitas applied to the Board for a conditional use permit to construct Twin

Creeks Wind Park, which includes forty-nine proposed wind turbines. By ordinance, the Board was required to conduct a hearing on the application within sixty days of receiving it and to provide a class two notice of the hearing. *See* MANITOWOC COUNTY, WIS., CODE § 24.09(2) (2005).[1] A class two notice requires that two insertions be published prior to the hearing. WIS. STAT. § 985.07(2) (2003–04).[2]

¶ 3. Navitas' application was placed on the agenda for the Board's December 20, 2004 meeting. The Board published the public hearing notice in the Manitowoc Herald-Times-Reporter on December 8 and December 13. The notice stated, in relevant part:

> [Navitas] wishes to construct and operate a 49 turbine wind farm in A-3, Agriculture zoned districts. The turbines are proposed to be located on the following properties . . . [affected property owners listed].
>
> Interested persons are urged to attend this meeting. Those wishing to submit written testimony may do so up to and including the time of said hearing.

In addition to publishing the official notice, the Board sent notice of the meeting to "adjacent property owners" by courtesy copy of a letter addressed to Jerrid Anderson of Navitas. The letter confirmed the date, location, and Navitas agenda topic for the meeting and included the following text: "*(Any group, individual, or local unit*

---

[1] MANITOWOC COUNTY, WIS., CODE ch. 24, known as the Wind Energy System Ordinance, ended on April 30, 2006. Effective May 1, a revised chapter 24, known as the Large Wind Energy System Ordinance, went into effect. All references to chapter 24 in this opinion are to the Wind Energy System Ordinance in effect prior to May 1, 2006 unless otherwise indicated.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

*of government that makes application to the Board of Adjustment is requested to make a special effort to contact all property owners affected, as well as all adjacent property owners in order that they may be aware of its importance.)"*

¶ 4. On December 20, the Board chair, Orville Bonde, opened the hearing by inviting attendees to speak in favor of or against the Navitas application but asked that speakers limit their remarks to five minutes. The first to speak was Anderson, who gave a presentation on Navitas and the proposed wind energy park. He explained that, in addition to seeking a conditional use permit from the county, Navitas would require approval or clearance from several different agencies such as the Federal Aviation Administration, the Wisconsin Department of Natural Resources, and the Wisconsin State Historical Preservation Office. He also advised the Board that Navitas had entered twenty-year lease agreements, with two five-year extensions, with the owners of the farms that made up the proposed wind energy park site.

¶ 5. Following Anderson's remarks, the Board invited others to speak. Several local residents spoke against the proposed wind energy park. They reiterated concerns about the project's impact on their quality of life, health, and safety. Many also shared the opinion that they had received inadequate notice of the proposed project and of the hearing.

¶ 6. After all who wished to speak were finished, Matt Payette, senior planner, and Peter Tarnowski, code administrator, presented the Manitowoc County Planning and Park Commission Staff Report to the Board. Relevant excerpts from the report are as follows:

> [Payette:] Manitowoc County drafted an ordinance within the last couple of months called the Manitowoc

527

County Wind Energy System Ordinance .... [T]he ordinance states that the Board will grant a conditional use permit if it is determined that the requirements of the ordinance are met and that the granting of the permit will not unreasonably interfere with the orderly land use and development plans of the county. The Board may include conditions in the permit if those conditions preserve the public health and safety and do not significantly increase the cost of the system or significantly decrease its efficiency or allow for an alternative system of comparable costs or efficiency ....

In review of the application at hand, it appears that [Navitas] meets the minimum standards that are required in the ... Ordinance. Worth noting on page ... six and seven you'll notice that there are sites that need variances. All the sites identified are within the wind project area and are participating owners. And those variances include variances to participating lot lines and participating residences.

. . . .

There's been a lot of testimony tonight on different factors of the project. And if the Board feels that it needs to apply additional conditions to this it can apply conditions that are listed throughout the staff report.

¶ 7. After the staff report, Board member Jim Aasen questioned Payette about the reference to variances. Tarnowski responded that the term variance as used in the ordinance was part of the conditional use process.

¶ 8. The Board took a break off the record and upon returning, it proceeded with a vote on the Navitas application. Board member Laurel Vondrachek moved to approve the "conditional use and variances for the turbines." Vondrachek added that Navitas had to "get

all their federal permits," "find [out] if there is any problem with any historical things there," obtain "financial assurance," "have the lowest amount of light intensity possible which would meet the FAA minimum requirements," and "[g]et a road use permit from the town." Aasen contested the Board's ability to consider the variances and suggested that the Board table the matter and request a legal opinion on its power to take them up. Ultimately, Bonde seconded Vondrachek's motion, and it passed on a vote of three to one.

¶ 9. Roberts sought certiorari review of the Board's decision pursuant to WIS. STAT. § 59.694(10), and Navitas intervened to protect its interests in the conditional use permit. The circuit court, in a comprehensive and detailed oral decision, affirmed the Board's decision and dismissed the plaintiffs' claims with prejudice. Roberts appeals.

## DISCUSSION

¶ 10. On appeal, we review the Board's decision, not the decision of the circuit court. *Board of Regents v. Dane County Bd. of Adjustment*, 2000 WI App 211, ¶ 10, 238 Wis. 2d 810, 618 N.W.2d 537. The decision to grant a conditional use permit is discretionary; we hesitate to interfere with administrative decisions and we will not substitute our discretion for that of the Board. *See Snyder v. Waukesha County Zoning Bd. of Adjustment*, 74 Wis. 2d 468, 476, 247 N.W.2d 98 (1976). We accord the decision of the Board a presumption of correctness, and here, Roberts has the burden of overcoming that presumption. *See Miswald v. Waukesha County Bd. of Adjustment*, 202 Wis. 2d 401, 411, 550 N.W.2d 434 (Ct. App. 1996).

¶ 11. When a case is before the court on certiorari review, the inquiry is limited to the following four factors: (1) did the Board keep within its jurisdiction; (2) did the Board proceed on the correct theory of law; (3) was the action of the Board arbitrary, oppressive, or unreasonable, and did it represent the will of the Board rather than its judgment; and (4) was the evidence such that the Board could have reasonably reached the determination under review. *See id.*, at 410–11.

¶ 12. We quickly dispense with the first factor, because no party disputes that the conditional use permit application was properly before the Board. Rather, Roberts argues that the Board failed to apply the law of zoning variances to the setback requirements referenced in the Wind Energy System Ordinance, that the five-minute time limit for presentations imposed by the board was arbitrarily conceived and implemented, and that the evidence presented was insufficient to support the Board's determination. We take each issue in the order presented.

### Variances in the Conditional Use Permit Process

¶ 13. We first turn to the Wind Energy System Ordinance, specifically the provision relating to setbacks, which states in relevant part:

(2) Set Backs . . . .

(b) The wind tower in a large wind system and each wind tower in a wind farm system must be set back:

1. from the property line of the parcel on which the wind tower is located by a distance equal to 1.1 times the height of the wind tower, but the Board of Adjust-

ment may grant a variance if the property line is shared with an adjacent parcel within the same wind farm system.

2. from any residence or business that is on an adjacent parcel by a distance of 1,000 feet, but the Board of Adjustment may grant a variance if the adjacent parcel is located within the same wind farm system.

MANITOWOC COUNTY, WIS., CODE § 24.06(2). Roberts advocates a technical interpretation of the term "variance," which by statute requires the applicant to establish an unnecessary hardship. *See* WIS. STAT. § 59.694(7)(c).[3]

¶ 14. Navitas and the Board both contend that a technical interpretation of the term "variance" is not appropriate here. They contend that, although Manitowoc's ordinance uses the term "variance" to describe an exception to the setback standard, it does not have the technical legal meaning commonly used in a zoning context. Rather, under the terms of this ordinance, a variance may be granted as part of the conditional use permit process, not as a separate determination based on the demonstration of a hardship.

¶ 15. At the hearing, board member Aasen questioned the Board's power to address variances at the meeting. Following the staff report, Aasen stated:

You made reference to all these sites needing a variance. If that's the case, that is the case, based on the

---

[3] The Board of Adjustment has the power "[t]o authorize upon appeal in specific cases variances from the terms of the ordinance that will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." WIS. STAT. § 59.694(7)(c).

county ordinance. This meeting was not published as a variance, but as a conditional use. So in fact we can't deal with these variances tonight even if we wanted to because they weren't published. There was no legal notice given. And if we were to consider the variances when that issue comes up, then I think each one has to be an individual variance.

In response, Tarnowski explained:

That wasn't . . . the way we had understood [the] ordinance to be written, because those are to participating property lines and written under the same section as the setback requirements. And the Board can consider those. So, whether you feel that the variance like all variances should be stated . . . if that's the way you want to consider it. We did not. We felt it was part of the conditional use process. Integral to the actual setbacks . . . . That's the way it was written and the way we understood it.

¶ 16. It is not the Board's duty to convince us that its interpretation of its own ordinance is correct, but rather it is Roberts' duty to convince us that the Board's interpretation is incorrect. *See State ex rel. Beidler v. Zoning Bd. of Appeals,* 167 Wis. 2d 308, 311, 481 N.W.2d 669 (Ct. App. 1992). Boards of Adjustment are entitled to a degree of deference in the interpretation and application of a county zoning ordinance. *See Marris v. City of Cedarburg,* 176 Wis. 2d 14, 33, 498 N.W.2d 842 (1993).

¶ 17. Here, the Board's interpretation is consistent with the State's decision to promote renewable energy resources, including wind power. WISCONSIN STAT. § 66.0401 states in part:

No county . . . may place any restriction, either directly or in effect, on the installation or use of a . . . wind energy system . . . unless the restriction satisfies one of the following conditions:

(a) Serves to preserve or protect the public health or safety.

(b) Does not significantly increase the cost of the system or significantly decrease its efficiency.

(c) Allows for an alternative system of comparable cost and efficiency.

Roberts' preferred interpretation of the Wind Energy System Ordinance, which would require Navitas to demonstrate unnecessary hardship in order to obtain individual variances for each wind tower in the system, is inconsistent with the express terms of Wisconsin's renewable energy policy. *See id.*

¶ 18. Also, Roberts concedes that a conditional use permit allows a property owner to put property to a use that the ordinance expressly *permits* if certain conditions have been met; in contrast, a variance authorizes a property owner to use property in a manner the ordinance *prohibits* when doing otherwise would create a hardship. *See City of Waukesha v. Town Bd.*, 198 Wis. 2d 592, 603, 543 N.W.2d 515 (Ct. App. 1995). Applying that principle to the Wind Energy System Ordinance supports the Board's interpretation. Under the terms of Manitowoc County, Wis., Code § 24.06(2), a setback from the property line of less than 1.1 times the wind tower's height or 1000 feet from a residence or business on an adjacent parcel is not prohibited; on the contrary, the Board is expressly empowered to approve a lesser setback when certain conditions are met. Because an alternate setback distance is permitted – not

prohibited – by the terms of the ordinance, the setback is properly part of the conditional use permit application.

¶ 19. We conclude that the term "variance" as used in the Wind Energy System Ordinance does not implicate the technical legal meaning typically employed in a zoning analysis. The drafters of the Wind Energy System Ordinance would have done well to choose a different word, as the term variance introduces some confusion; however, it is clear from the context of the ordinance, the State's express renewable energy policy, and the permissive rather than prohibitive language, that the Board's interpretation of the term "variance" and application of the ordinance were reasonable.

¶ 20. We acknowledge that Roberts also challenges the Board's legal notice, claiming it was inadequate because it did not put property owners on notice that variances would be considered at the meeting. Had we agreed with Roberts that the technical legal meaning of the term "variance" should be employed here, we would review the adequacy of the published notice. However, because we have concluded that the Board properly considered the setback modifications as part of the conditional use permit process, no separate notice regarding variances was required.

*Hearing Procedure and Due Process*

¶ 21. Roberts challenges the manner in which the Board conducted the hearing. In particular, Roberts takes offense at the five-minute time limit on the individual presentations to the Board. Calling the hear-

ing process "arbitrary and capricious," Roberts asserts that the Board was not the "slightest bit interested" in the information or arguments of those opposed to the wind energy park.

¶ 22. First, Roberts argues that the Board unfairly applied the time limit because Anderson, who presented on behalf of Navitas, was afforded much more than five minutes to present information in favor of the wind energy park. The record confirms that Anderson did indeed speak for longer than five minutes; however, his prepared remarks provided the context for the entire debate about the wind energy park. Also, much of his time was used to answer questions from the Board or from other presenters. The Board's decision to extend his time limit is understandable and helped facilitate the subsequent discussion. We have located no law, and Roberts offers none, to show that the Board exceeded its authority in allowing the primary proponent of the conditional use permit additional time to present to the Board.

¶ 23. Second, Roberts states, "given the time constraints that the Board had imposed on the total length of the proceedings, the Board's limitations made it impossible for anyone meaningfully to be heard." The record, however, does not support Roberts' contention. When the Board invited members of the public to speak, at least sixteen took the opportunity. They participated by asking additional questions, voicing opinions and concerns about the project, and registering their opposition.

¶ 24. One presenter, Jeff Roberts, had collected information about Navitas and wind turbines in general and offered his packet of information to the Board. He stated that his research uncovered "[s]everal common issues" with wind-turbine systems in Europe,

535

specifically, "[n]oise, light flicker, loss of countryside views, electrical interference of TV and radio broadcasts, and physical safety." Before all of these issues could be addressed individually, the Board chair indicated that the five-minute time limit was over. Jeff Roberts then gave a copy of his information to the Board.

¶ 25. Other presenters raised questions about noise levels, access roads, property values and quality of life. Of all the people who spoke in opposition to the wind energy park, only Jeff Roberts was asked to stop when he exceeded the time limit. Two others were advised that their time limit was approaching, and they ended their remarks on time. No other speakers required a time-limit warning. Finally, after many took the opportunity to speak, the Board asked, "Anyone else want to speak against this [wind energy park]." No one responded.

¶ 26. Clearly, all who wished to speak had the opportunity to do so. Our review of the hearing transcript reveals nothing unreasonable about the time limit or how it was applied.[4] Roberts' contention that it was "impossible for anyone meaningfully to be heard" is simply unsupported in the record.

*Sufficiency of the Evidence*

██

¶ 27. Roberts argues that there is insufficient evidence in the record to support the Board's decision

---

[4] We observe that some counties have codified the five-minute time limit for presentations. *See, e.g.,* DANE COUNTY, WIS., CODE § 7.63(6) (2006) (no registrant will be allowed to speak for more than five minutes); LA CROSSE COUNTY, WIS., CODE § 2.03(5)(a) (2005) ("There shall be a 5-minute limit on presentations unless the Board allows more time.").

granting a conditional use permit. Roberts first contends that the Board should have made a determination as to each parcel of property affected by the proposed wind energy park. Roberts asserts, "Because of the very nature of conditional uses, permits must necessarily be site-specific." The Board's finding, Roberts asserts, was "obviously defective" because "the Board did not make a site-by-site evaluation of the impact of each of the 49 towers." Roberts offers no legal argument in support of this contention, and we need not give it any further consideration. We do, however, note that the Wind Energy System Ordinance does, by its express terms, contemplate conditional use permits that relate to a wind farm system as a whole, not individual tower sites within that system.

¶ 28. Roberts also contends that evidence presented in opposition to the wind energy park was disregarded by the board. Roberts laments, "Had the Board been willing to show even the least bit of open-mindedness or curiosity, they would have discovered substantial concerns, supported by evidence in the Record which clouded the purported virtues of wind power[.]" However, it is not "substantial concerns" that will overcome the Board's decision, but rather the absence of substantial supporting evidence. The Board must make its decision based on substantial evidence, which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stacy v. Ashland County Dep't. of Public Welfare*, 39 Wis. 2d 595, 603, 159 N.W.2d 630 (1968) (citations omitted).

¶ 29. Roberts specifically contends that the Board did not consider the hazards of ice fling, the impact of ambient noise and shadow flicker, or the dangers to wildlife. Our review of the record indicates otherwise.

537

¶ 30. Following Anderson's presentation, the Board engaged him in an extended question-and-answer dialogue wherein the Board sought information about lighting on the turbines, the lifespan of a turbine tower, the location of power cables, the ability to continue farming around the turbines, potential ice buildup on the blades or tower collapse, and the impact on surrounding property values. The Board explored with Anderson the size and visibility of the turbines and their energy output. Anderson also answered questions about environmental impact, particularly on wildlife, and potential noise pollution. The Board also considered the staff report, which recommended approval of the permit with certain conditions attached.

¶ 31. With regard to Roberts' specific concerns, Anderson explained that turbines will not throw ice from the blades because "they ice up and they have no lift and they slow down. The control system, the machine watchers, sense that and shut it down as well." He also explained that for shadow flicker to occur, "the sun has to go in step and . . . the rotor has to between you and the sun . . . . [T]he wind has to be blowing in that direction, because the rotor will actually spin . . . . [S]o not only does the sun have to be going this way, the wind has to be blowing this way, and so the rotor is perpendicular to face to you and the sun." A dialogue about ambient noise and decibel levels ensued for four pages of hearing transcript, and concerns about wildlife were taken up in the context of Navitas' communication with the U.S. Fish and Wildlife Agency staff and planned consultation with Wisconsin's State Historic Preservation Office. Thus, Roberts' claim that such hazards were not considered is without merit.

538

¶ 32. Finally, Roberts' assertion that substantial evidence dispels the "purported virtues of wind power" is irrelevant if substantial evidence also supports the Board's decision to grant a conditional use permit. It is the Board, not this court, that determines the weight to be given the evidence of record. *See Sills v. Walworth County Land Mgmt. Comm.*, 2002 WI App 111, ¶ 11, 254 Wis. 2d 538, 648 N.W.2d 878. We will uphold the Board's decision where, as here, it is supported by substantial evidence, even if there is also substantial evidence to support the opposite conclusion. *Id.*

### Other Issues

¶ 33. Roberts presents several other complaints that are peripheral to the primary issues addressed above. For example, Roberts complains that the letters sent by the Board to notify adjacent property owners of the meeting did not arrive soon enough. Yet there is no dispute that the Board published the required class two notice. The Board exceeded its duty by sending a courtesy copy of the hearing-confirmation letter to adjacent property owners.

¶ 34. Also, Roberts complains that Payette and Tarnowski, county staff members, considered all of the Navitas information in advance of the meeting in order to prepare the staff report but that the Board did not take equal time to consider written materials submitted by Jeff Roberts at the hearing. However, it is the responsibility of the staff to review the application and related materials, to ensure the application is complete, to administer the ordinance, and to report to the Board. *See* MANITOWOC COUNTY, WIS., CODE § 24.09(1). Furthermore, the public was invited to submit written testimony to the Board for review in advance of the hearing.

¶ 35. We appreciate that we have not addressed all of the nuances and subtleties associated with Roberts' characterization of the issues, particularly those intended to demonstrate a devious motive underlying the Board's actions. However, "[a]n appellate court is not a performing bear, required to dance to each and every tune played on an appeal." *State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978). To the extent we have not addressed arguments raised in this appeal, the arguments are deemed rejected.

## CONCLUSION

¶ 36. We conclude that the Board's decision to grant a conditional use permit to Navitas for the construction of a forty-nine-turbine wind energy park was made according to law and is supported by substantial evidence. The Board afforded proper notice to the public, allowed adequate time for the public to be heard at the December 20 hearing, and employed a reasonable interpretation of the Wind Energy System Ordinance. Accordingly, we affirm the order of the circuit court sustaining the Board's determination.

*By the Court.*—Order affirmed.