# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 22, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP428**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV6873

IN COURT OF APPEALS
DISTRICT I

---

EARL GRUNWALD,

PETITIONER-APPELLANT,

V.

CITY OF MILWAUKEE BOARD OF ZONING APPEALS,

RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Milwaukee County: GWENDOLYN G. CONNOLLY, Judge. *Affirmed.*

Before White, C.J., Donald, P.J., and Colón, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Earl Grunwald appeals from an order of the circuit court affirming a decision of the City of Milwaukee Board of Zoning Appeals (BOZA), which found that Grunwald was using his property as an outdoor salvage operation.  For the reasons set forth below, we reject Grunwald's arguments and affirm.

## BACKGROUND

¶2      Grunwald owns a property located in the City of Milwaukee in an area zoned for industrial use.  Grunwald was granted a permit for the property to be used as a contractor's yard.

¶3      On November 11, 2019, the Department of Neighborhood Services (DNS) issued an order which required Grunwald to:  (1) discontinue parking on an unapproved surface; and (2) discontinue the use of the property as an outdoor salvage yard or apply for an outdoor salvage special use permit.  Subsequently, the parking count was dismissed, leaving only the outdoor salvage count.

¶4      On December 5, 2019, Grunwald filed a Notice of Appeal and Application for Review with BOZA.  On March 5, 2020, a hearing was held. DNS's counsel submitted a series of photographs that depicted various items sitting in Grunwald's yard including, but not limited to, a pile of metal, telephone poles, a boiler, a boat, tire rims, a car hauler, a trailer, a winch, an overturned table, pallets, and a stack of plastic lawn chairs.

¶5      Grunwald contended that he uses the items stored in his yard, with the exception of the boat, for various purposes in his contractor's business, which involves the moving of buildings and large tanks (such as large gas tanks) from one location to another.  Another witness, who identified himself as Steve, stated

that he had driven by Grunwald's place "many times and it doesn't look in any way offensive."[1]  Steve did not believe that it was reasonable to pursue an action against someone who has things in his backyard, which nobody can see.  DNS's counsel argued that Grunwald's property met the definition of an outdoor salvage operation and that "a review of the photographs … speaks for itself."

¶6    At the end of the hearing, Grunwald's attorney indicated that Grunwald wanted to "explore applying for a salvage operation permit[.]"  In light of this request, BOZA voted to take the matter under administrative review and gave Grunwald time to apply for the permit.  BOZA also gave Grunwald an opportunity to submit a written letter regarding his arguments.  The record does not reflect that Grunwald either applied for a permit or submitted a follow-up letter.

¶7    After several adjournments, on October 8, 2020, BOZA revisited the matter and voted to uphold DNS's order.  In a written decision, BOZA found that Grunwald was using his property as an outdoor salvage operation requiring a special use permit.

¶8    Grunwald sought certiorari review in the Milwaukee County Circuit Court.  The circuit court affirmed BOZA's decision.  Grunwald now appeals.

## DISCUSSION

¶9    On certiorari review, we examine BOZA's decision, not the circuit court's decision.  *Roberts v. Manitowoc Cnty. Bd. of Adjustment*, 2006 WI App

---

[1] Steve's last name is recorded on the transcript as "inaudible."  Steve stated that he had heard about the hearing from a friend of Grunwald's; Grunwald did not ask him to appear.

169, ¶10, 295 Wis. 2d 522, 721 N.W.2d 499. Grunwald makes three primary arguments in his brief. We address each of his arguments.

### I. Substantial Evidence

¶10    On appeal, Grunwald first argues that BOZA's determination was not based on substantial evidence.

¶11    "'Substantial evidence' is evidence of such convincing power that reasonable persons could reach the same decision as the board." *Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶43, 362 Wis. 2d 290, 865 N.W.2d 162 (citation omitted). Substantial evidence is "less than a preponderance of the evidence," but "more than 'a mere scintilla' of evidence and more than 'conjecture and speculation.'" *Id.*, ¶44 (citation and one set of quotation marks omitted).

¶12    The board, not this court, determines the weight to be given to the evidence of the record. *Roberts*, 295 Wis. 2d 522, ¶32. We will uphold a board's decision where "it is supported by substantial evidence, even if there is also substantial evidence to support the opposite conclusion." *Id.* To the extent that Grunwald is asking us to interpret the language of the underlying ordinances, we apply a *de novo* review and use the same principles as in statutory interpretation. *See DOR v. Microsoft Corp.*, 2019 WI App 62, ¶13, 389 Wis. 2d 350, 936 N.W.2d 160; *Milwaukee Dist. Council 48 v. Milwaukee Cnty.*, 2019 WI 24, ¶11, 385 Wis. 2d 748, 924 N.W.2d 153.

¶13    Grunwald contends that the evidence in his case only supports a finding that his property is being used as a contractor's yard, not as an outdoor salvage operation.

¶14     The Milwaukee Code of Ordinances ("MCO") defines a contractor's yard as "an establishment used for the outdoor repair, maintenance or storage of a contractor's vehicles, equipment or materials."  MCO 295-201-125 (2024).[2]  In comparison, an outdoor salvage operation is defined as:

> an establishment providing the storage of any equipment, goods, junk, material, merchandise or inoperable or unregistered motor vehicles in the open for more than 48 hours.  Such establishment typically performs the dismantling of items for the salvage of usable parts.  This term does not include a recycling collection facility, mixed-waste processing facility, material reclamation facility, wholesale and distribution facility or hazardous materials storage.

MCO 295-201-517.

¶15     In regards to the definition of an outdoor salvage operation, Grunwald does not appear to dispute that the property is an establishment, that it provides him with storage, or that the items in his yard were outdoors for more than forty-eight hours.  Rather, Grunwald contends that the items on his property do not qualify as "junk, goods, or merchandise" and are "most closely defined as equipment or materials" based on common dictionary definitions.  *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (stating that we give statutory language "its common, ordinary, and accepted meaning").

¶16     Even if we accept as true that the definitions offered by Grunwald correctly define the terms utilized in the ordinances, the definitions do not support

---

[2] We note that DNS's underlying order was issued in 2019.  It does not appear that the relevant language of the ordinances at issue has changed since then; accordingly, we cite to the 2024 version.

his argument. Grunwald defines "junk" as "old iron, glass, paper, or other waste that may be used again in some form; secondhand, worn, or discarded articles; something of poor quality; something of little meaning, worth, or significance." The tire rims and scrap metal on the property, for example, qualify as "old iron … that may be used again in some form." Thus, we reject Grunwald's argument that his yard did not contain "junk."

¶17    Grunwald also contends that the items were not "in the open" because they were not visible to the public due to a fence. *See* MCO 295-201-517. As BOZA's counsel observes, however, MCO requires that all outdoor salvage operations be screened from public view. *See* MCO 295-805-4-h. Thus, we are not persuaded that the existence of a fence establishes that Grunwald was not operating an outdoor salvage yard.

¶18    In addition, Grunwald argues that he does not operate an outdoor salvage yard because he does not do any dismantling of items to sell for their useable parts. This argument ignores the plain language of the salvage yard ordinance. The ordinance states that an outdoor salvage yard "*typically* performs the dismantling of items for the salvage of usable parts." MCO 295-201-517 (emphasis added). If the ordinance meant that *all* outdoor salvage operations must perform the dismantling of items, it would not have used the term "typically." *See Kalal*, 271 Wis. 2d 633, ¶45.

¶19    Lastly, Grunwald notes that DNS's counsel did not present any witnesses. However, there was other evidence before BOZA. Dozens of photographs of the property were submitted. BOZA was not required to accept all of Grunwald's testimony as true and could draw its own conclusions. *See State ex rel. Messner v. Milwaukee Cnty. Civ. Serv. Comm'n*, 56 Wis. 2d 438, 448, 202

N.W.2d 13 (1972) (stating that "the credibility of witnesses in an administrative adjudication is within the province of the finders of fact and the agency's findings on credibility will not be reviewed by a writ of certiorari"); *State v. Kimbrough*, 2001 WI App 138, ¶29, 246 Wis. 2d 648, 630 N.W.2d 752 (stating that "[e]ven when a single witness testifies, a [circuit] court may choose to believe some assertions of the witness and disbelieve others"). Therefore, we reject Grunwald's argument that BOZA's determination was not based on substantial evidence.

## II. Prejudgment of Case

¶20 Next, Grunwald argues that one or more Board members prejudged his case.

¶21 "Determining whether a board member has prejudged a matter requires an examination of the facts of the individual case." *Marris v. City of Cedarburg*, 176 Wis. 2d 14, 26, 498 N.W.2d 842 (1993). A decision will be invalidated if there is "[a] clear statement 'suggesting that a decision has already been reached, or prejudged[.]'" *Id.* (citation omitted).

¶22 In *Marris*, which Grunwald relies on, the chairperson referred to Marris's legal position as a "loophole" in need of "closing." *Id.* at 27. In addition, the chairperson suggested that they should try to "get [Marris] on the Leona Helmsley rule." *Id.* Our supreme court explained that the phrase "'get her' indicates prejudgment and a desire to prosecute." *Id.* at 30. "Impartial decision-makers do not 'get' the parties before them," but rather "objectively apply the law to the facts of each case." *Id.* Additionally, the "Leona Helmsley rule" reference suggested that the chairperson was looking outside the bounds of the ordinance, and comparing Marris to a person who was convicted of tax evasion. *Id.*

¶23    In contrast, here, we are not persuaded that the two passages that Grunwald points to reflect that the Board members prejudged his case.  After Grunwald's testimony was taken and Steve was sworn in, a Board member asked Steve, "All right.  What statement would you like to tell [BOZA] regarding the outdoor salvage?"  Grunwald argues that this statement reflects that the Board member had already reached a determination that Grunwald's yard was an outdoor salvage operation, and not a contractor's yard.  We disagree.  The issue in this case was whether Grunwald's yard was an outdoor salvage operation.  The Board member was simply asking Steve for his statement on the issue.

¶24    The other passage Grunwald points to is as follows:

> [Board member]: Can -- can we get past the equipment information?  Because that doesn't translate to anything that I can understand about land use and how this property is being used.
>
> Grunwald's Attorney:  Well, I -- you know --
>
> [Board member]: Going through that just isn't informing me of how it's being used.  I'm hearing staff telling me it's being abused based on the zoning.  So, I'd like to hear why he should, uh, prove (inaudible) --

In response, Grunwald's counsel then cited to the ordinance and began discussing his view of the law.

¶25    Grunwald argues that this passage "makes it clear that [the Board member] believes that Mr. Grunwald is abusing the ordinance … based upon what he has been told by staff."  Additionally, Grunwald argues that this passage demonstrates that the Board member was not applying the plain language of the ordinances because the Board member is "uninterested" in what Grunwald had to say about the items stored on the property.  Again, we disagree.  As BOZA's counsel observes, this passage took place after Grunwald's counsel had elicited

lengthy testimony from Grunwald. The Board member was simply attempting to refocus the hearing on whether Grunwald was complying with the zoning requirements. Thus, we are not persuaded that the statements at issue here show pre-judgment as in *Marris*. *Id.* at 26.

### III. Hearsay

¶26 Finally, Grunwald argues that BOZA should not rely on an email written by a neighbor stating that Grunwald's property was a "low point" in the neighborhood. Grunwald asserts that the neighbor did not testify at the hearing and his comments are nothing more than hearsay. Hearsay, however, can be properly considered in an administrative hearing and there is no indication here that BOZA relied solely on uncorroborated hearsay. *See Gehin v. Wisconsin Grp. Ins. Bd.*, 2005 WI 16, ¶56, 278 Wis. 2d 111, 692 N.W.2d 572.

¶27 Therefore, for all of the reasons above, we reject Grunwald's arguments and affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).