STATE of Wisconsin EX REL. Gerald EARNEY, Cheryl Earney, The Mississippi Connection Land and Timber Company, LLC and Wisconsin Bluff Sands, LLC, f/k/a Badger Bluff Sands, LLC, Petitioners-Appellants,†

v.

BUFFALO COUNTY BOARD OF ADJUSTMENT, Respondent-Respondent.

Court of Appeals

*No. 2015AP1762. Submitted on briefs April 5, 2016.*
*—Decided July 19, 2016.*

2016 WI App 66

† Petition for Review Filed

505

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *G. Richard White* of *Weld, Riley, Prenn & Ricci, S.C.* of Eau Claire.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Ronald S. Stadler* and *Aaron J. Graf* of *Mallery & Zimmerman, S.C.* of Milwaukee.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. KESSLER, J.   Gerald and Cheryl Earney, the Mississippi Connection Land and Timber Company, LLC, and Wisconsin Bluff Sands, LLC (f/k/a Badger Bluff Sands, LLC) (collectively "Earney"), appeal an order affirming, on *certiorari* review, the Buffalo County Board of Adjustment's ("the Board") decision to deny Earney's application for a Conditional Use Permit ("CUP") to operate a frac sand mine in the town of Waumandee. We affirm.

## BACKGROUND

¶ 2.   On July 23, 2013, Earney filed a CUP application for a nonmetallic mine and wet processing facility to be located on the Schoepps Valley Road in Waumandee. Earney sought to mine industrial sand for "gas and/or oil production and potential unknown markets." The application described the process as including: "removal and stockpiling of topsoil and overburden; excavation of marketable material using backhoes, bulldozers, and possible blasting to assist in the removal of overburden; overland conveyance of the raw material from the excavation areas to the wet processing facility; wet processing (washing and sorting); treatment and recycling of the processing water; on-site stacking and drainage of the wet sand; loading sand onto transport trucks; and hauling wet sand off-site for additional dry processing elsewhere." The proposed mining area was approximately 82.22 acres.

Earney intended that the frac sand mine would oper-
ate 200 days per year for ten years and would produce
2500 tons of sand per day. The wet plant would operate
five days a week, for eighteen hours a day, and would
produce an average of eighty truckloads of frac sand
transported from the mine each day. The application
provided three potential "haul routes," all of which
required the trucks carrying the sand to travel west on
the Schoepps Valley Road and eventually make their
way to Minnesota. Those trucks would return to the
mine each day, making a total number of 160 trips per
day.

¶ 3. The application described three phases of
the mine development. In Phase I, the area around the
wet plant would be mined and processed. Phases II
and III would require mining on the other side of the
Schoepps Valley Road. The sand would be moved by
conveyor across the road to the wet plant for process-
ing and loading onto the trucks. The total amount of
time for the construction and mining of Phases I
through III was estimated to be between five and seven
years.

¶ 4. Earney submitted the application to both
the Buffalo County Land Resources Committee and
the Town of Waumandee for each to provide a recom-
mendation to the Board. The Town of Waumandee
recommended that the Board support approval of the
CUP. The Land Resources Committee, with four voting
members, was split. Thus, the Land Resources Com-
mittee did not recommend approval of the CUP.

¶ 5. In the weeks following the application, Ear-
ney also submitted a proposed reclamation plan to the
Buffalo County Land Resources Department. An engi-
neering firm, commissioned by Buffalo County, re-
viewed the plan to determine whether "this project

509

meets the intent of the Buffalo County Nonmetallic Mining Ordinance for Reclamation Plans." The firm concluded that "the majority of the reclamation plan" met the requisite intent. The record does not suggest that the reclamation plan was ever subjected to a public hearing or that a reclamation permit was ever granted.

¶ 6. The CUP application, however, did come before the Board for a public hearing on January 31, 2014. The petitioning parties presented lengthy testimony in favor of the mining project, while five experts testified against the project. Attorney Karla Vehrs, representing Waumandee residents on future land use and real estate matters, testified about traffic concerns and insufficient infrastructure to support the volume of trucks. Dr. Robert Miller, the former chair of the Soil Science Department at North Carolina State University and the former Dean of the University of Rhode Island College of Resource Development, testified that "the agricultural land has zero probability in producing valuable vegetation after reclamation and forestland will have a 20% probability of succeeding." James Drost, an experienced mining and metallurgical engineer and employee of the United States Bureau of Mines, expressed concern over the chemicals used to process the sand and explained the health risks associated with certain chemicals. He also expressed concerns over the amount of water needed to wash the sand in relation to the "silica silt ratio." Scott Mehus, the Education Director for the National Eagle Center, testified that the mining project would likely result in the "[d]isturbance, degradation and destr[uction]" of the winter habitat for Golden Eagles. Jeff Falk, a statistician, testified about air quality concerns in the relevant area, particularly the "cumulative effects of

increasing diesel emissions" near a school. Multiple members of the public also expressed concern about traffic, chemical usage, property values, and air quality, among other things. The Board adjourned the meeting so that it could conduct a visit of the site.

¶ 7. On April 14, 2014, the Board held a second public hearing. The hearing was initially held at the proposed mine site, where the Board and members of the public took a tour of the site. The hearing was then reconvened at the courthouse in Alma, where the petitioning parties presented expert testimony addressing the concerns raised at the previous hearing.

¶ 8. Ultimately, the Board unanimously voted to deny the CUP application. The Board considered the following seven factors set forth by article XXI, section 212 of the Buffalo County Zoning Ordinance: (1) the location, nature, and size of the proposed operation or use; (2) the physical size of the site in relation to the proposed use; (3) the location of the site with respect to anticipated traffic and existing or future streets or roads giving access to the proposed site; (4) the compatibility with existing uses of the proposed land use, including adjacent lands; (5) the proposed project's harmony with current and future development of the district; (6) existing factors, including but not limited to: topography, drainage, water quantity and quality, air quality, soil types, soil erosion, and vegetative cover; and (7) the relationship of the proposed use to the public interest, the purpose and intent of the ordinance, and substantial justice to all parties concerned. *See* Buffalo County, Wis., Zoning Ordinance art. XXI, § 212 (2016). The Board cited numerous reasons, in consideration of these factors, for its denial of the CUP application. Earney and the remaining petition-

ing parties sought *certiorari* review in the circuit court. The court affirmed the Board's decision. This appeal follows.

## DISCUSSION

¶ 9. On appeal, Earney contends that the Board erroneously denied the CUP application based upon "reclamation standards prohibited by state law and upon road issues it had agreed not to consider." Specifically, Earney contends that the reclamation plan—a required component to a CUP application for a nonmetallic mine site—provided for effective reclamation of the mining site; thus, the Board essentially exceeded its jurisdiction by holding the application to a higher-than-required standard. Earney also contends that the Board was equitably estopped from considering the potential impact of the mining project on the Schoepps Valley Road. We disagree.

¶ 10. A person aggrieved by the denial of a conditional use permit may commence an action against the municipality "seeking the remedy available by certiorari." Wis. Stat. § 59.694(10) (2013–14).[1] On appeal from a circuit court's decision in an action for *certiorari* review of a board's decision, we review the decision of the board, not that of the circuit court. *See Roberts v. Manitowoc Cty. Bd. of Adjustment*, 2006 WI App 169, ¶ 10, 295 Wis. 2d 522, 721 N.W.2d 499. We accord the decision a presumption of correctness, and the person appealing the board's decision must overcome that presumption. *See id.* Our review, like that of the circuit court, is limited to inquiring: (1) whether

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

the Board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the determination in question. *See id.*, ¶ 11.

¶ 11. "Our review is further limited by the principle that if our decision on one issue disposes of an appeal, we need not review the other issues raised." *See Clark v. Waupaca Cty. Bd. of Adjustment*, 186 Wis. 2d 300, 304, 519 N.W.2d 782 (Ct. App. 1994). "Thus, if we conclude that any one of the board's reasons for denying the variances at issue passes certiorari review, we affirm without commenting on the board's other reasons." *See id.*

¶ 12. The decision to grant a CUP is discretionary; we hesitate to interfere with such decisions and will not substitute our judgment for that of the board. *See Roberts*, 295 Wis. 2d 522, ¶ 10. The burden is on the party seeking a CUP to establish that it has met the conditions. *See Delta Biological Res. v. Board of Zoning Appeals of City of Milwaukee*, 160 Wis. 2d 905, 912, 467 N.W.2d 164 (Ct. App. 1991).

**The Board did not Exceed its Jurisdiction.**

¶ 13. Earney's argument that the Board exceeded its jurisdiction when rejecting the CUP application is premised on two discernable assertions: (1) the reclamation plan was evaluated by an engi-

neering firm, on behalf of the County, which indicated that the plan provided for effective reclamation of the mining site; and (2) the Board's consideration of environmental factors such as slope, erosion control, drainage, and land topography was erroneous because those issues were addressed by the reclamation plan, which was deemed satisfactory by the county engineer. Accordingly, Earney contends that the Board tried to "have it both ways" by denying the CUP application for failing to meet "the [Board's] unspecified standards which exceeded both the Buffalo County ordinance requirements and the maximum requirements allowed by state law," while also determining, through "its agent, Williams Engineering," that the project "satisfied applicable reclamation standards." Earney's arguments fail for multiple reasons.

¶ 14. First, contrary to Earney's implication, nothing in the record suggests that the reclamation plan was actually approved. The authority to approve reclamation plans rests with the Buffalo County Land Resources Department, not with the county-retained engineer. *See* Wis. Stat. § 295.13(1)(a) (responsibility of enacting nonmetallic mining ordinance rests with the county). The engineering firm's assessment that the plan was satisfactory is not the equivalent of obtaining approval from the Land Resources Department. Rather, the engineering report itself acknowledges that the firm's review of the reclamation plan was merely "cursory" and not conclusive. There is no evidence in the record suggesting that the Land Resources Department actually scheduled a hearing to discuss the reclamation plan or issued a reclamation permit, as required by the Buffalo County

Ordinances. *See* BUFFALO COUNTY NONMETALLIC MINING RECLAMATION ORDINANCE §§ 757.13.01, 757.13.02, 757.14.08, 757.16.01.

¶ 15.  Accordingly, the Board did not erroneously consider the environmental issues addressed by the reclamation plan. Indeed, the zoning ordinance at issue requires that the Board consider a wide range of factors when determining whether to grant a nonmetallic mining CUP, including factors pertaining to topography, soil erosion, and drainage. The relevant ordinance states:

> In consideration of any Conditional Use Permit application, the Board of Adjustment shall consider the following factors. Consideration should include the effect of the proposed operation or usage from both an individual and cumulative perspective:
>
> 1.  The location, nature, and size of the proposed operation or use.
>
> 2.  The physical size of the site in relation to the proposed use.
>
> 3.  The location of the site with respect to anticipated traffic and existing or future streets or roads giving access to the proposed use.
>
> 4.  Its compatibility with existing uses of the proposed land use, including adjacent lands.
>
> 5.  Its harmony with current and future development of the district.
>
> 6.  Existing factors including, but not limited to: topography, drainage, water quantity and quality, air quality, soil types, soil erosion, and vegetative cover.
>
> 7.  The relationship of the proposed use to the public interest, the purpose and intent of this ordinance, and substantial justice to all parties concerned.

BUFFALO COUNTY, WIS., ZONING ORDINANCE art. XXI, § 212 (2016).

¶ 16.   The Board considered exactly what it was required to consider. Moreover, the Board cited numerous reasons for rejecting the CUP application— not just factors pertaining to reclamation. These reasons included, but are not limited to:   (1) a negative effect on tourism; (2) the potential for air pollution; (3) the degradation of water quality and quantity; (4) the decrease in surrounding property values; (5) sharp corners throughout the Schoepps Valley Road; (6) the number of truck loads and the concern for resident safety; (7) the proposal did not conform with the Town of Waumandee's future land use plan; and (8) concern for the safety of children who attend school near the proposed haul routes. If the record supports any one of the Board's findings, we must uphold the Board's decision. *See Clark*, 186 Wis. 2d at 304. The Board heard from multiple experts who testified about numerous environmental and safety concerns. The Board heard from members of the public, toured the proposed mining site, and received a petition from the Cochrane-Fountain City School District requesting that the permit be denied for the health and safety of students and school staff. Thus, the Board considered the requisite factors and acted within its jurisdiction.

## Equitable Estoppel is not Relevant to the Facts of this Case.

¶ 17.   Earney contends that the Board erroneously premised its rejection of the CUP application on the condition of the Schoepps Valley Road, despite assurance at the January 31, 2014 public hearing

that the road would not be a consideration in the Board's determination. Specifically, Earney contends that at the January 31, 2014 meeting, Kevin Rich, a representative of Wisconsin Bluff Sands, LLC (a petitioner in this action) informed the Board that he was in discussions with the Town of Waumandee to formulate a plan to improve conditions of the road. The road improvements would be paid for by Wisconsin Bluff Sands, LLC. Earney contends that a member of the Board confirmed that the road fell under the jurisdiction of the Town of Waumandee and that the Board would not consider concerns about the road in its determination of the CUP application. In essence, Earney contends that the Board was estopped from considering the impact the mining project would have on the road.

¶ 18. Equitable estoppel has four elements: " '(1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment.' " *Nugent v. Slaght*, 2001 WI App 282, ¶ 29, 249 Wis. 2d 220, 638 N.W.2d 594 (citation omitted). Estoppel must be demonstrated by "clear, satisfactory, and convincing" evidence "and must not rest on mere inference or conjecture." *Id.*

¶ 19. Assuming, without deciding, that the elements of estoppel are met, we conclude that the Board still acted within its jurisdiction. As stated, the Board considered all seven of the factors outlined by the Buffalo County Zoning Ordinance and rejected the CUP application for numerous reasons—not just considerations pertaining to the road. The Board cited

multiple environmental and safety concerns having nothing to do with the road.

¶ 20. For the foregoing reasons, we affirm the circuit court.

*By the Court.*—Order affirmed.