COURT OF APPEALS
DECISION
DATED AND FILED

November 14, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1069**

Cir. Ct. No. **2013CV345**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

EAGLE COVE CAMP & CONFERENCE CENTER, INC., ARTHUR G. JAROS, JR., WESLEY A. JAROS AND RANDALL S. JAROS,

   PLAINTIFFS-APPELLANTS,

 V.

ONEIDA COUNTY BOARD OF ADJUSTMENT,

   DEFENDANT-RESPONDENT,

COUNTY OF ONEIDA,

   DEFENDANT.

APPEAL from an order of the circuit court for Oneida County: MICHAEL H. BLOOM, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Eagle Cove Camp & Conference Center, Inc. (Eagle Cove),[1] appeals from the circuit court's order denying its petition for certiorari relief and affirming the decision of the Oneida County Board of Adjustment (the Board), which denied Eagle Cove's application for a conditional use permit (CUP). Eagle Cove seeks to build a Bible camp on property located in the Town of Woodboro in Oneida County. The Board denied Eagle Cove's CUP on the basis that recreational camps are not permitted uses of property in the zoning districts where Eagle Cove's property is located. We affirm upon the limited issues available under certiorari review.

## BACKGROUND

¶2     This case has a long history spanning almost two decades.[2] Eagle Cove's CUP application sought approval for the "development of a religious [B]ible camp adjacent to Squash Lake in the Town of Woodboro, Wisconsin." According to Eagle Cove, "[t]he Jaros brothers' Christian faith, rooted in their Biblical stewardship understanding ('first fruits' and offerings 'without blemish,') compelled them to dedicate and convert" the family-owned property "to full-time

---

[1] The plaintiffs-appellants in this case are Eagle Cove Camp & Conference Center, Inc., Arthur G. Jaros, Jr., Wesley A. Jaros, and Randall S. Jaros. Arthur, Wesley, and Randall Jaros are brothers and also serve as sole members of the governing board of Eagle Cove Camp & Conference Center, Inc. We will refer to them collectively as Eagle Cove.

[2] For a detailed discussion of the procedural history underlying this appeal, see *Eagle Cove Camp v. County of Oneida (Eagle Cove II)*, No. 2018AP940, unpublished slip op. ¶¶6-26 (WI App Nov. 19, 2019). *See also Eagle Cove Camp & Conf. Ctr., Inc. v. Town of Woodboro (Eagle Cove I)*, 734 F.3d 673 (7th Cir. 2013).

Christian ministry as a Bible camp, serving youth, including youth with medical disabilities, during the summer season and older teens and adults during the remainder of the year." (Footnotes omitted.)

¶3      The project was to include construction of a single three-level "lodge consisting of a chapel, classrooms, dining hall, lodging facilities, multi-purpose room/gymnasium[,] and administrative areas," with adjacent "camping facilities, an archery range, volleyball courts, soccer field, low ropes and high ropes courses, a snow tubing/mountain boarding course, 25-yard air rifle range, swimming beach, paint ball area[,] and future ice skating facilities." The camping facilities would be comprised of five outdoor tent camping sites that would each accommodate up to eleven people. Further, a visitor center/service building was to be constructed near the highway, which would include a waiting lobby, first aid center, restrooms, and storage areas. According to the plans, "a self-propelled rail car (Budd RDC) will shuttle guests and workers to the main lodge and then back again to the parking lot situated near the highway." At its maximum occupancy, the camp was proposed to house 348 individuals, including campers, staff, and guests. The facility would be state licensed as a recreational camp.

¶4      Under the Oneida County Zoning and Shoreland Protection Ordinance (the Ordinance), a portion of Eagle Cove's property is zoned as residential and farming (District 4) and the remainder is zoned as single-family residential (District 2). According to the Ordinance, "[t]he purpose of the Single Family Residential District is to provide an area of quiet seclusion for families. This is the County's most restrictive residential zoning classification. Motor vehicle traffic should be infrequent and people few." ONEIDA COUNTY, WIS.,

ZONING AND SHORELAND PROTECTION ORDINANCE ch. 9, art. 2, § 9.22.A. (Feb. 26, 2006) (effective May 15, 2000).[3] It is undisputed that the Ordinance does not specifically refer to a "Bible camp" or "religious camp" as an authorized use in any zoning districts. The Ordinance does, however, permit churches and schools in Districts 2 and 4 with a CUP.[4] ORDINANCE §§ 9.22.D.1., 9.24.A.4.a.

¶5      The Ordinance also provides for the construction of recreational camps, which are defined as "[a]reas of land improved with buildings or tents, and sanitary facilities used for the accommodation of groups for educational or recreational purposes." ORDINANCE ch. 9, art. 10. Recreational camps are not allowed within District 2 or District 4—as stated in ORDINANCE §§ 9.22 and 9.24, respectively—but they are permitted in zoning Districts 1-A, 1-B, 5, 10, and in unzoned areas. In fact, the record states that there are fifteen recreational camps, including religious camps, located in other zoning districts in the County.

¶6      In August 2009, the Oneida County Planning and Zoning Committee (the Committee) denied Eagle Cove's CUP application, adopting the reasons contained in the planning and zoning department's staff report. The report outlined the details of the property and the proposed use and summarized correspondence that the department had with Eagle Cove regarding the department's many concerns. Ultimately, the report stated that the department could not recommend that Eagle Cove's CUP be approved, citing the purposes of

---

[3] All references to the Ordinance are to ch. 9, art. 2 unless otherwise noted, and all references to the Ordinance in this decision are to the February 26, 2006 amendment.

[4] The Ordinance defines "conditional uses" as "those uses which, because of their unique characteristics, cannot properly be allowed without consideration of the impact of those uses. Such uses may be allowed subject to the specific limitation, review, and approval provisions for conditional uses provided in this ordinance."

zoning Districts 2 and 4; the fact that Eagle Cove stated it did not intend to build either a church or school; and the fact that the proposed use was "consistent" with a recreational camp and, therefore, not "compatible" with other uses in District 2. After an on-site inspection and a public hearing, the Committee concluded that the proposed use of the property was not permitted or otherwise consistent with the property's zoning classification.

¶7     On September 14, 2009, Eagle Cove appealed the Committee's decision to the Board.  Eagle Cove argued that it was entitled to relief for several reasons, including that the Committee: (1) violated Eagle Cove's right to due process of law; (2) violated Eagle Cove's right to free exercise of religion; (3) refused to "recognize, discuss and abide by the Supremacy Clause of the United States Constitution"; (4) violated Eagle Cove's rights under the federal Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc; (5) erred by finding that the "use, values and enjoyment of neighboring property would be substantially impaired or diminished by the establishment, maintenance or operation of the proposed conditional use"; (6) erred by finding that "the proposed conditional use would not be compatible with the use of adjacent land and any adopted local plans for the area"; and (7) erred by finding that Eagle Cove's CUP application for a Bible camp was for a recreational camp and did not fall under the definition of a church or school as used in the Ordinance.

¶8     The Board held public hearings on Eagle Cove's appeal on December 1, 2009—where the Board heard oral argument from the parties, entertained public comment, and entered written evidence into the record—and on January 12, 2010—where it deliberated and issued its oral decision.   On February 11, 2010, the Board issued its written decision, including findings of fact

and conclusions of law. According to the Board, based on communications with the parties, "it was agreed that the [Board] would address and decide two issues":

> a. May the Board find, in this case, that [the Ordinance] violates [RLUIPA], or, alternatively, based on RLUIPA, may the Board, in this case, approve an "exemption" to the Ordinance?

> b. Is the proposed Camp & Conference Center an allowed conditional use within the meaning of Sec. [9.22.D.1.[5]] of the Ordinance, i.e. a church, school, library, community building or museum?

The Board explained that once it "deliberate[d] and vote[d]" on those questions, it "then may either take a final vote on the appeal, or recess to a later date to continue consideration of the appeal, which may include a site visit and acceptance of additional testimony, other evidence, and public comment."

¶9     Ultimately, based on the evidence, arguments, and submissions of the parties, the Board answered both questions in the negative. Thus, the Board voted that the proposed use is not an allowed conditional use, terminated Eagle Cove's appeal, and affirmed the Committee's denial of Eagle Cove's CUP application.

¶10     In the Board's written decision, it concluded that it had no authority to repeal or amend the Ordinance or to determine its constitutionality. *See Kmiec v. Spider Lake*, 60 Wis. 2d 640, 645-46, 211 N.W.2d 471 (1973); *Ledger v. Waupaca Bd. of Appeals*, 146 Wis. 2d 256, 266, 430 N.W.2d 370 (Ct. App. 1988). The Board further determined that it was obligated to apply RLUIPA in

---

[5] The Board cites § 9.22(D)(10) of the Ordinance twice in its decision. The version of the Ordinance we have in the appellate record does not have a § 9.22(D)(10). The parties' briefs refer to ORDINANCE § 9.22.D.1., which appears to be correct based on our review.

rendering its decision and that the Board had authority under RLUIPA to change a policy or practice "that results in a substantial burden on religious exercise, … by providing exemptions from the policy or practice for applications that substantially burden religious exercise." (Formatting altered.) The Board ultimately concluded that zoning District 2 "does not prohibit religious exercise, as it allows for use of property for a 'church' or 'school' upon issuance of a CUP in that district." Thus, the Board concluded, Eagle Cove did not demonstrate that ORDINANCE § 9.22 imposes a substantial burden on religious exercise:

> The terms of the Ordinance are not such as would impose a direct, primary and fundamental responsibility for rendering religious exercise impracticable in this case. The fact that the Ordinance does not allow for the operation of a religious "camp and conference center" of the kind proposed by [Eagle Cove] in a single family residential district does not in itself establish that it imposes such a substantial burden, or that it violates RLUIPA in any other respect. RLUIPA does not require that [Eagle Cove] be allowed to engage in religious exercise of the kind proposed by [Eagle Cove] on the specific property in question. There is no evidence that non-religious uses allowed by the Ordinance as conditional uses are favored over religious uses.

Therefore, the Board explained that the Ordinance does not violate RLUIPA, and no exemption was justified. Because no exemption was justified, the Board could not grant a CUP as requested by Eagle Cove.

¶11     As to Eagle Cove's specific CUP application, the Board concluded that "the proposed use cannot reasonably be deemed either a 'church' or a 'school,' even on a broad interpretation of those words," and that interpreting Eagle Cove's proposed Bible camp as such "would be inconsistent with the clearly stated intent of [z]oning District 2"—"the county's most restrictive residential zoning classification"—to "provide an area of quiet seclusion for families." The Board continued, "The proposed use is more accurately considered a 'recreational

7

camp' as defined by the Ordinance and licensed by the State as a 'recreational/educational camp,'" which is not "a use allowed as a permitted or conditional use in either [z]oning Districts 2 or 4."

¶12 Eagle Cove originally filed this action with the circuit court on November 27, 2013, asserting a claim for certiorari review from the Board's denial of the CUP.[6] After briefing by the parties and Eagle Cove's unsuccessful motion to submit additional evidence and for discovery, the court, by oral ruling and written order, affirmed the Board's decision denying Eagle Cove's application for a CUP.

¶13 The circuit court determined, based upon the certiorari record and without reweighing the evidence, that the Board's conclusion—i.e., that the proposed use constitutes a recreational camp and not a church or school—was not unreasonable or without a rational basis. It further held that the Board's

---

[6] Before filing this action, Eagle Cove filed an action in federal court, claiming violations of its rights under the United States and Wisconsin Constitutions arising from the denial of its CUP. *See Eagle Cove II*, No. 2018AP940, ¶14. The United States District Court for the Western District of Wisconsin dismissed all Eagle Cove's claims on their merits and declined to exercise supplemental jurisdiction over the certiorari claim arising from the denial of the CUP, and the Seventh Circuit Court of Appeals affirmed. *See Eagle Cove II*, No. 2018AP940, ¶¶15-16; *Eagle Cove I*, 734 F.3d at 683. Eagle Cove petitioned for a writ of certiorari in the United States Supreme Court, which the Court denied. *See Eagle Cove II*, No. 2018AP940, ¶16. This action was stayed pending resolution of the petition for a writ of certiorari.

On August 29, 2014, after Eagle Cove's unsuccessful litigation in federal court, Eagle Cove filed an amended complaint in this case, adding fifteen additional constitutional claims. The Board moved to dismiss all claims, except the certiorari claim, on the basis of claim preclusion and issue preclusion. The circuit court granted the Board's motion; Eagle Cove moved for reconsideration of that decision, twice; and the court ultimately entered a judgment dismissing all claims, save for the certiorari claim. Eagle Cove then appealed to this court, and, on November 19, 2019, we affirmed the court's decision dismissing the claims on the basis of claim preclusion. *Eagle Cove II*, No. 2018AP940, ¶4. Our supreme court and the United States Supreme Court both denied review.

determination that the Bible camp does not constitute a permitted conditional use in zoning Districts 2 or 4 was not arbitrary, oppressive, or unreasonable, and it was reasonably based on evidence in the record. The court also observed that because the proposed use is not permitted in those zoning districts, the Board's statutory authority to grant relief to Eagle Cove was restricted under WIS. STAT. § 59.694 (2021-22).[7]

¶14 Finally, the circuit court took judicial notice of the federal court decisions, noting that it was "not utilizing these federal court decisions for purposes of issue or claim preclusion"; rather, it was using the decisions in support of its conclusions on certiorari review. As a result, the court concluded that the Board's decision passed strict scrutiny analysis because the Board "demonstrated that it has a compelling [s]tate interest in preserving the rural nature around Squash Lake achieved by the least restrictive means possible; a neutral zoning ordinance."[8] Eagle Cove appeals.

## DISCUSSION

¶15 Eagle Cove raises several challenges to the denial of its CUP. As an initial matter, we note that the parties disagree regarding the standard of review in this case. Eagle Cove claims that our review is de novo because this case presents

---

[7] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[8] "Under the Free Exercise Clause of the First Amendment of the United States Constitution, made applicable to state and local governments by the Fourteenth Amendment, no law may prohibit the free exercise of religion." *Vision Church v. Village of Long Grove*, 468 F.3d 975, 996 (7th Cir. 2006). "The protections embodied by the Free Exercise Clause were codified in RLUIPA …. Simply put, both the Free Exercise Clause and RLUIPA provide that, if a facially-neutral law or land use regulation imposes a substantial burden on religion, it is subject to strict scrutiny." *Vision Church*, 468 F. 3d at 996 (citing 42 U.S.C. § 2000cc(a)(1)).

9

questions of law, specifically, the "interpretation of ordinances and statutes." We disagree.

¶16    A party aggrieved by the denial of a CUP may commence an action against the municipality "seeking the remedy available by certiorari." WIS. STAT. § 59.694(10). "Certiorari is a mechanism by which a court may test the validity of a decision rendered by a municipality, an administrative agency, or an inferior tribunal." *Ottman v. Town of Primrose*, 2011 WI 18, ¶34, 332 Wis. 2d 3, 796 N.W.2d 411. As the Board correctly describes, "[t]he standard of review in a certiorari action from the decision of a board of adjustment is highly deferential, and the scope of appellate review is quite narrow." *See State ex rel. City of Waukesha v. City of Waukesha Bd. of Rev.*, 2021 WI 89, ¶19, 399 Wis. 2d 696, 967 N.W.2d 460; *Koenig v. Pierce Cnty. Dep't of Hum. Servs.*, 2016 WI App 23, ¶13 n.5, 367 Wis. 2d 633, 877 N.W.2d 632.

¶17    Accordingly, our scope of certiorari review is limited to:

> (1) whether the Board kept within its jurisdiction;
> (2) whether it proceeded on a correct theory of law;
> (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

*Ottman*, 332 Wis. 2d 3, ¶47; *State ex rel. Earney v. Buffalo Cnty. Bd. of Adjustment*, 2016 WI App 66, ¶10, 371 Wis. 2d 505, 885 N.W.2d 167. The decision of the Board is afforded a presumption of correctness and validity, and the party appealing the Board's decision must overcome that presumption. *See Ottman*, 332 Wis. 2d 3, ¶¶48, 50; *Earney*, 371 Wis. 2d 505, ¶10; *see also Roberts v. Manitowoc Cnty. Bd. of Adjustment*, 2006 WI App 169, ¶10, 295 Wis. 2d 522, 721 N.W.2d 499 ("The decision to grant a conditional use permit is

discretionary; we hesitate to interfere with administrative decisions and we will not substitute our discretion for that of the Board.").

¶18    Addressing the parties' arguments on the merits, Eagle Cove first argues that the Board erred because the Ordinance effectively prohibits a year-round religious camp with one principal structure throughout the entire County.  In other words, Eagle Cove asserts that the Ordinance is facially unconstitutional under the Wisconsin Constitution.  Second, Eagle Cove argues that the Board erred by not considering the CUP application under ORDINANCE § 9.20.F. as an unclassified or unspecified use.  Third, Eagle Cove argues that the circuit court erred by concluding that the Board lacked authority under WIS. STAT. § 59.694 to grant a privilege or special exception to use the land as a religious camp.[9]  Fourth, Eagle Cove argues that the court erred by "violating the law of the case and/or issue preclusion" by concluding that the issues in the federal case and this case were "identical."  Fifth, and finally, Eagle Cove argues that the court erred by concluding that the County, the Committee, and the Board "comported with the requirements of strict scrutiny under the Wisconsin Constitution for purposes of conducting statutory certiorari review."

¶19    Based on our review of the arguments, it appears to us—and the Board agrees—that Eagle Cove is solely asserting that the Board proceeded upon

---

[9] Eagle Cove argues repeatedly in its briefing before this court that the circuit court erred in its decision.  However, as the Board recognizes, that is not the question before us.  "On appeal, we review the Board's decision, not the decision of the circuit court."  **Roberts v. Manitowoc Cnty. Bd. of Adjustment**, 2006 WI App 169, ¶10, 295 Wis. 2d 522, 721 N.W.2d 499.

multiple incorrect theories of law. We address those challenges that are properly before us below.[10]

*I. Facial Unconstitutionality under Wisconsin Constitution*

¶20 Initially, it is important to note, as the Board does, that Eagle Cove does not appear to challenge the two questions specifically answered by the Board: (1) that the Ordinance does not violate RLUIPA—and, therefore, no exemptions are justified under RLUIPA; and (2) that the proposed Bible camp cannot reasonably be deemed either a "church" or "school" under ORDINANCE § 9.22.D.1. What the Board ultimately determined was that Eagle Cove's CUP application was for a conditional use that "is more accurately considered a 'recreational camp' as defined by [Article 10 of] the Ordinance." Consequently, the Board denied Eagle Cove's CUP application because it is undisputed that recreational camps are not a permitted conditional use in zoning Districts 2 or 4. It does not appear that Eagle Cove now challenges the Board's conclusions on those issues. Thus, those are not issues we address in this appeal, other than to note that considering the evidence in the record, we have no basis to conclude that the

---

[10] We note that Eagle Cove's third, fourth, and fifth challenges pertain specifically to the circuit court's decision. As we noted, *see supra* note 9, we review the Board's decision, not the circuit court's decision. *Roberts*, 295 Wis. 2d 522, ¶10. Thus, the conclusions reached by the circuit court are not before us, and none of these arguments provide a basis to overturn the Board's decision. We will not address these challenges further.

To the extent that we could construe Eagle Cove's arguments regarding the circuit court to create an argument applicable to the Board's decision, we refuse to do so. We will not abandon our neutrality to properly develop Eagle Cove's arguments. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82. Accordingly, to the extent we do not address an issue or argument Eagle Cove intended to raise, we conclude such an issue or argument is insufficiently developed.

Board's decisions on those issues were based on an incorrect theory of law; arbitrary, oppressive, or unreasonable; or without evidentiary support.[11]

¶21    Instead, Eagle Cove's first—and overall foundational—argument is that its proposed use is a *year-round* recreational camp *with only a single principal structure*; thus, its applied-for use is prohibited everywhere in the County under the Ordinance.  According to Eagle Cove, "It was and is undisputed [that] the [Ordinance] … completely prohibits religious exercise everywhere in the County *in the form of* a year-round religious camp having only one single principal structure—the compact, environmentally friendly design applied for by [Eagle Cove] in December 2006."  (Emphasis added.)

¶22    In support of its arguments, Eagle Cove points to the language of the Ordinance.  The Committee's decision noted that recreational camps, both secular and religious, "are expressly allowed in other zoning districts within the County upon issuance of an Administrative Use Permit or a [CUP], including in District 1-A (Forestry), District 1-B (Forestry), District 5 (Recreational) and

---

[11]    The Board explains that Eagle Cove argued to the circuit court that the Board erred by considering the proposed use to be a recreational camp rather than a school or a church; however, the Board states, and we agree, that Eagle Cove does not raise this issue on appeal.  At most, Eagle Cove argues that its Bible camp is *comparable to* a church or school: "[T]he actual functional 'uses' to which [Eagle Cove's] land would be put must be ascertained and compared to functional uses allowed within that parcel's applicable zoning districts."

For the record, we note that under the definition in Article 10 of the Ordinance, "Recreation Camps" are "[a]reas of land improved with *buildings or tents*, and *sanitary facilities* used for the accommodation of groups for educational or recreational purposes." *See* ORDINANCE ch. 9, art. 10 (emphasis added).  Eagle Cove's proposed construction of its Bible camp is not a single-structure property.  The record is clear that the construction of the camp would include a multi-purpose lodge as well as camping facilities with outdoor tent camping sites affixed with "plumbing fixtures … [to] serve those outdoor camping sites."  Thus, the Board properly determined, based on the facts in the record, that "[t]he proposed use is more accurately considered a 'recreational camp' as defined by the Ordinance and licensed by the State as a 'recreational/educational camp.'"

District 10 (General Use)," which "encompasses 73.87% of the land in Oneida County." Eagle Cove disagrees, pointing to the language in the Ordinance pertaining to the specific zoning districts. Eagle Cove asserts that the Committee's findings are inapplicable to its proposed use because Districts 1-A and 1-B allow only "*seasonal* recreational camps with *more than 1 principal structure*," *see* ORDINANCE §§ 9.21.A.4.b., 9.21.B.3.b. (emphasis added), and Districts 5 and 10 allow only "recreational camps with *more than 1 principal structure*," *see* ORDINANCE §§ 9.25.C.3., 9.28.B. (emphasis added).

¶23 Accordingly, Eagle Cove argues that the Ordinance "imposed an unconstitutional-under-Wisconsin-law total exclusion from the entire county and, even if the proposed camp were proposed to have more than one principal structure, from the entire Town of Woodboro on [Eagle Cove's] applied-for use," and that "the [Ordinance], as so applied, did constitute an 'unjust' law." In other words, even if Eagle Cove's actual proposed use was found to have more than one principal structure, and thus would be allowed in another zoning district, the Ordinance is still unconstitutional because it fully prohibits year-round religious recreational camps with only a single principal structure in Woodboro. In summary, according to Eagle Cove, its applied-for use is not "provided for" anywhere in the Ordinance and is, thus, "facially prohibited everywhere within … the County of Oneida." (Formatting altered.)

¶24 Initially, we disagree with Eagle Cove's representation that it is "undisputed" that its Bible camp is prohibited everywhere in the County. While the issue was discussed during the Board proceedings, it was never decided or determined by the Board that any recreational camps with one principal structure are either allowed or prohibited anywhere in the County. Further, it was never determined by the Board that Eagle Cove's specific proposed Bible camp was

prohibited in all zoning districts in the County, as it was never determined that the Bible camp was a recreational camp with only one principal structure. On that point, we question whether Eagle Cove's proposed construction could be considered to have only one principal structure, given that the plan would include a sizable lodge, outdoor tent camping sites, and a visitor center/service building near the highway. Regardless, neither question was answered by the Board for purposes of certiorari review; thus, neither question is before us on appeal.

¶25 The question before the Board was whether Eagle Cove's proposed use was allowed on specific land, and the Board determined only that it was not "a use allowed as a permitted or conditional use in either [z]oning District 2 or 4." Accordingly, the cases cited by Eagle Cove addressing total exclusion of uses from a municipality and discrimination against churches—as churches are allowed in those districts and the proposed Bible camp is not a church, *see generally **State ex rel. Lake Drive Baptist Church v. Bayside Bd. of Trs.***, 12 Wis. 2d 585, 108 N.W.2d 288 (1961)—are inapplicable.

¶26 Eagle Cove then attempts to tie the flawed premise that its proposed religious camp is prohibited throughout the County to a poorly developed constitutional argument relating to the free exercise of religion.[12] It also appears

_____

[12] We say poorly developed because it is unclear in Eagle Cove's brief-in-chief before this court which constitutional provision it claims the Ordinance has violated. Eagle Cove's arguments mention "religious exercise," "[f]acially prohibited," "unconstitutional," RLUIPA, and the Wisconsin Constitution's "protections of religious liberty." Citing to *Coulee Catholic Schools v. LIRC*, 2009 WI 88, ¶60, 320 Wis. 2d 275, 768 N.W.2d 868, Eagle Cove also claims that the circuit court erred by "ignor[ing] the uniform state supreme court case law development … under state constitutional law of protection of particularized forms of religious exercise against total jurisdiction-wide prohibition" and by concluding that "RLUIPA provides greater protection than [Eagle Cove's] free exercise rights under the Constitution." Therefore, we assume that Eagle Cove's challenge is based on article I, section 18 of the Wisconsin Constitution, known as the Freedom of Conscience Clauses. *See Coulee*, 320 Wis. 2d 275, ¶¶56, 58.

(continued)

that Eagle Cove is arguing that the Ordinance is *facially* unconstitutional because it allegedly does not allow any year-round recreational religious camp with one principal structure anywhere in the County. *See State v. Wood*, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63 (describing the difference between facial and as-applied constitutional challenges). Thus, we take Eagle Cove's argument to be that the Ordinance itself impedes the free exercise of religion, not that the Board's application of the Ordinance in this case has done so. Eagle Cove's argument fails for several reasons.

¶27 First, the issue of free exercise of religion under the *Wisconsin Constitution* was not presented to the Board. Eagle Cove's appeal to the Board provided "seven reasons" why it was "entitled to … relief from the denial of [its] application for [a] CUP," which included arguments concerning the United States Constitution and RLUIPA, but we see no mention of article I, section 18 of the Wisconsin Constitution or the Freedom of Conscience Clauses. Generally, issues

---

In contrast, and likely because Eagle Cove made this argument before the circuit court, the Board claims throughout its response brief that Eagle Cove is actually making a substantive due process argument. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986) (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised). In reply, Eagle Cove admits that its brief-in-chief "sets forth authorities without expressly describing their underlying legal theory" and notes that the Board identified that legal theory "as being 'substantive due process.'" However, Eagle Cove maintains that the cases it cited "plainly involved free exercise of religion" and "make[] no mention of 'substantive due process.'"

Regardless, Eagle Cove states that "[a]ssuming substantive due process were in view," the circumstances here would qualify as a due process violation. *See Eternalist Found., Inc. v. City of Platteville*, 225 Wis. 2d 759, 777, 593 N.W.2d 84 (Ct. App. 1999) ("The Supreme Court has indicated that, to qualify as a substantive due process violation, an 'executive action' must 'shock the conscience.'" (citation omitted)). We conclude that to the extent Eagle Cove is truly advancing a substantive due process argument before this court, it is undeveloped. Accordingly, we will not address this argument further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

not raised before the Board cannot be raised on judicial review. *See Goranson v. DILHR*, 94 Wis. 2d 537, 545, 289 N.W.2d 270 (1980).

¶28 Second, regardless of whether the issue was properly presented, the Board determined that it had no authority to repeal, amend, or determine the constitutionality of the Ordinance. *See Kmiec*, 60 Wis. 2d at 645-46 ("[Z]oning boards of adjustment are not created as appellate bodies, and … legal or constitutional questions involved in zoning requirements are not a subject matter for the determination of such boards, but must be presented for consideration to the proper legal forum."); *Ledger*, 146 Wis. 2d at 266. Thus, the Board did not address the issue of whether the Ordinance was unconstitutional, other than whether it was in violation of RLUIPA.[13]

---

[13] To the extent Eagle Cove now argues that it did raise the constitutionality issue in a memo before the Board and that the Board "incorrectly asserts" that it had no authority to determine the constitutionality of the Ordinance, we are not persuaded. Before the Board, Eagle Cove argued:

> [*Kmiec v. Spider Lake*, 60 Wis. 2d 640, 645-46, 211 N.W.2d 471 (1973)] and [*Ledger v. Waupaca Bd. of Appeals*, 146 Wis. 2d 256, 266, 430 N.W.2d 370 (Ct. App. 1988)] are pre-RLUIPA case decisions which merely hold that the [Board] has no power to declare a zoning ordinance or zoning map unconstitutional on its face such that no future applicant has to bother to consider the text of the ordinance or map. Appellants do not request such a declaration.
>
> ….
>
> Wisconsin case law makes clear that non-judicial boards like the [Board] can and should consider a nonfacial, as applied, challenge based upon direct application of constitutional principles.

(continued)

¶29    The Board properly determined that it had no authority to repeal, amend, or determine the constitutionality of the Ordinance; however, our review does not end there.  It is well established that "litigants can raise constitutional objections to [a] municipal determination in certiorari review." *Hanlon v. Town of Milton*, 2000 WI 61, ¶13, 235 Wis. 2d 597, 612 N.W.2d 44.  "In a certiorari proceeding a litigant may argue that his or her constitutional right … has been violated in an effort to establish that a municipal determination was not made according to law or is unreasonable, arbitrary and oppressive."  *See id.*, ¶14. Nevertheless, "[c]ommon law certiorari review is a limited review of the record made before the [Board], while de novo review is an entirely independent circuit court action in which the circuit court creates its own record and gives no deference to the [Board's] determination."  *See Metropolitan Assocs. v. City of Milwaukee*, 2011 WI 20, ¶2, 332 Wis. 2d 85, 796 N.W.2d 717.

¶30    Initially, we note that in addition to Eagle Cove's failure to argue article I, section 18 of the Wisconsin Constitution before the Board, it also failed to argue this particular issue before the circuit court within its certiorari review claim.  In its certiorari brief, Eagle Cove lodged both a procedural due process challenge and a facial substantive due process challenge under the Wisconsin Constitution.  Yet, we see no mention of an argument under article I, section 18. We previously addressed Eagle Cove's ambiguous briefing on this point. *See supra* note 12.

---

(Emphasis added.)  Again, we see no mention of freedom of religion under the Wisconsin Constitution within the record citations Eagle Cove identifies in support of its position.  More importantly, however, and as noted above, Eagle Cove now appears to argue that the Ordinance is facially unconstitutional based on the Wisconsin Constitution, which was clearly not argued before the Board and which Eagle Cove admits in its argument above that the Board had no power to declare a zoning ordinance unconstitutional on its face.

¶31    Eagle Cove did, however, raise article 1, section 18 of the Wisconsin Constitution in the federal courts, claiming that the protection offered under the Wisconsin Constitution is greater than that offered under federal law. *Eagle Cove Camp & Conf. Ctr., Inc. v. Town of Woodboro (Eagle Cove I)*, 734 F.3d 673, 683 (7th Cir. 2013).  Eagle Cove then brought these same or similar claims before the circuit court when it added the additional constitutional claims to its amended complaint, *see supra* note 6, which we previously concluded were all claim precluded, *Eagle Cove Camp v. County of Oneida (Eagle Cove II)*, No. 2018AP940, unpublished slip op. ¶¶2-4 (WI App Nov. 19, 2019).  We stated that "Eagle Cove was required to bring all of its claims in [the federal] action" and that "proceedings in state court are limited to Eagle Cove's certiorari claim, which the district court dismissed without prejudice." *Id.*, ¶4; *see also Teske v. Wilson Mut. Ins. Co.*, 2019 WI 62, ¶23, 387 Wis. 2d 213, 928 N.W.2d 555 ("In other words, 'a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings.'" (citation omitted)).

¶32    Accordingly, we will not independently address Eagle Cove's article 1, section 18 of the Wisconsin Constitution claim within this certiorari review.  At the very least, this issue was one that might have been litigated in the prior proceedings.  *See Teske*, 387 Wis. 2d 213, ¶23.  Thus, this claim was properly dismissed on claim preclusion grounds.  It is not appropriate for Eagle Cove to now attempt to advance this argument again—or to develop a differently nuanced constitutional argument—under the certiorari review umbrella where the argument was already denied on the merits.  Furthermore, the record before us is not sufficient to enable a facial constitutional review of this issue, and

it is not appropriate, at this juncture of the proceedings, to provide Eagle Cove another opportunity to do so.

¶33 Third, even if we were to consider this issue, we are unconvinced that this argument would prevail. Our supreme court has explained that "[t]he protections and prohibitions in the Wisconsin Constitution are far more specific [than the federal protections for religious freedom]. And with regard to the rights of conscience, this clause contains extremely strong language, providing expansive protections for religious liberty." *Coulee Cath. Sch. v. LIRC*, 2009 WI 88, ¶60, 320 Wis. 2d 275, 768 N.W.2d 868.

> When faced with a claim that a state law violates an individual or organization's freedom of conscience, we have generally applied the compelling state interest/least restrictive alternative test. Under this test, the religious organization has to prove (1) that it has a sincerely held religious belief, and (2) that such belief is burdened by the application of the state law at issue. Upon this showing, the burden shifts to the state to prove (3) that the law is based upon a compelling state interest (4) that cannot be served by a less restrictive alternative.

*Id.*, ¶61 (citation omitted).

¶34 We accept that Eagle Cove has a sincerely held religious belief that it is compelled "to dedicate and convert" its property "to full-time Christian ministry as a Bible camp." Even assuming that fact, however, Eagle Cove's claim of a violation of its free exercise of religion under the Wisconsin Constitution has no merit for several reasons. First, Eagle Cove is not being prohibited from using its land to advance its religious beliefs—a church or a parochial school would be an allowed conditional use in zoning Districts 2 and 4. In other words, as the Seventh Circuit explained, "It is not the land use regulations that create a substantial burden, but rather Eagle Cove's insistence that the expansive,

year-round Bible camp be placed on the subject property." ***Eagle Cove I***, 734 F.3d at 681. Further, while Eagle Cove asserts that its Christian faith compels it to develop a Bible camp on the property, it has not asserted that having a religious camp with *one structure*, as opposed to several structures, is a vital part of the exercise of its religion or any other religious exercise.

¶35 As the ***Coulee*** court observed, "General laws related to building licensing, taxes, social security, and the like are normally acceptable." ***Coulee***, 320 Wis. 2d 275, ¶65. We agree with the Seventh Circuit's conclusion that "[t]he zoning ordinance at issue here is generally applicable to all residents within Oneida County and thus would qualify as 'normally acceptable' under Article I, § 18 of the Wisconsin Constitution." ***Eagle Cove I***, 734 F.3d at 683. The municipality here "zoned the area around Squash Lake for single family purposes four years before Eagle Cove first sought to build the camp. The zoning regulations do not seek to inhibit Eagle Cove's religious activity; they merely encourage an area of quiet seclusion for families around Squash Lake." ***Id.*** at 682.

¶36 If Eagle Cove's position were carried to its logical conclusion, anytime a property owner claimed it had a religious purpose for an otherwise prohibited use, that religious claim would be deemed to supersede the county's restrictions. This would nullify zoning laws.[14] Thus, there is no basis to set aside the Board's decision on this issue.

---

[14] Further, assuming that Eagle Cove's reading of the Ordinance is correct and that no year-round recreational camps with one principal structure are allowed anywhere in the County, this prohibition would apply equally to secular recreational camps as well as religious camps.

*II. Application of* ORDINANCE *§ 9.20.F.*

¶37    Eagle Cove's second argument on appeal is that ORDINANCE § 9.20.F.[15] permitted the Board "to allow [Eagle Cove's] applied-for use as an unclassified or unspecified use, upon showing of compatibility with the uses listed for the zoning district or districts in which the parcel is located."  According to Eagle Cove, the Board applied an erroneous theory of law when it failed to consider the CUP application as an unclassified or unspecified use and failed to consider the actual uses of land by adjacent property owners when considering if the quiet and peaceful use would be affected by the camp.  In particular, Eagle Cove asserts that because the Ordinance "contains no category for [a] Recreational Camp having a single principal structure, the actual functional 'uses' to which [Eagle Cove's] land would be put must be ascertained and compared to functional uses allowed within that parcel's applicable zoning districts."

¶38    The Board argues that Eagle Cove failed to raise this issue before the Board and that the issue was first argued before the circuit court during its certiorari review.  In response, Eagle Cove draws our attention to its appeal to the Board, as well as a memorandum it wrote prior to the Board's decision.  Upon our review, it is clear that there was some discussion during the Board proceedings regarding ORDINANCE § 9.20.F.  During the December 1, 2009 Board hearing, the County's attorney made the following argument:

> Again, I don't think this [B]oard has to go any further than the definition of recreational camp as set forth in the

---

[15] ORDINANCE § 9.20.F. provides: "Unclassified or unspecified uses are presumed to be prohibited unless authorized by the Committee after review and recommendation of the Zoning Administrator, provided that such uses are compatible with the permitted uses, administrative review uses, or conditional uses allowed in that district."

> [O]rdinance. I don't think anything in that definition says, if you don't have more than one principal [structure], you're not a recreational camp here in Oneida County. That's just not the case for the reasons I set forth before. That definition stands on its own.
>
> ….
>
> I think, in essence, … [Eagle Cove] is advocating a position that would read their proposed use totally out of the zoning code. [Eagle Cove is] suggesting that … then this would be an unclassified use under [§ 9.20.F.] of the [O]rdinance ….
>
> And I don't think there's any question that this proposed use, for the various reasons that I've already set forth or argued to this [B]oard, is not compatible with the uses that are allowed in District 2 and District 4.
>
> So even if [Eagle Cove] is correct, that [its] proposed use should be read out of [O]rdinance and treated as an unclassified use[,] I don't think that carries the day for [Eagle Cove].

The Board's final decision does not, however, specifically address § 9.20.F.

¶39    First, Eagle Cove has not demonstrated that the Board was *required* to consider its proposed use under ORDINANCE § 9.20.F. Instead, Eagle Cove argued predominantly that the circuit court—whose decision we do not review for error—erred by failing to "perform[] the compatibility analysis required by [§] 9.20.F." Regardless, Eagle Cove has not cited any legal authority supporting the proposition that the Board committed an error of law by failing to specifically apply § 9.20.F.

¶40    It appears that Eagle Cove attempted to assert before the Board, and now attempts to assert before this court, that because the Ordinance is allegedly unconstitutional, Eagle Cove was entitled to a "special exception" under ORDINANCE § 9.20.F., and the Board erred by failing to grant that exception. But to do so, the Board would first have to find the Ordinance unconstitutional. As

23

discussed above, the Board did not have any authority to do that. Second, and again, Eagle Cove's position on this point is based on the faulty premise that the Ordinance's zoning scheme provided for the "ban[]" of a year-round recreational camp having a single principal structure from the entire County. That question was not presented to, nor decided by, the Board, and it is not properly before us on certiorari review.

¶41    Nevertheless, our review of the record does not find support for application of ORDINANCE § 9.20.F. in favor of Eagle Cove. For example, the staff report adopted by the Committee did address § 9.20.F., noting that "[a]t this time, the Department cannot recommend to the [Committee] that this recreational camp and conference center would be *compatible with* the purposes stated in [§] 9.22.A." (Emphasis added.) In other words, the proposed Bible camp, serving up to approximately 350 people and including a passenger train, was not compatible with "an area of quiet seclusion for families" where "[m]otor vehicle traffic should be infrequent and people few." *See* § 9.22.A. The Board ostensibly agreed with that conclusion—without specifically referencing § 9.20.F.—when it determined that the proposed use was not like a church or a school "even on a broad interpretation of those words" because the Bible camp "would be inconsistent with the clearly stated intent of [z]oning District 2."

¶42    In reality, Eagle Cove is merely asking us to reweigh the evidence to reach a different conclusion. Reweighing the evidence is something we cannot do under our standard of review, and we must presume that the Board's decision is correct and valid, absent evidence to the contrary. *See **Ottman***, 332 Wis. 2d 3, ¶¶48, 50. Eagle Cove has not met its burden to provide that evidence to the contrary. The Board could reasonably conclude that Eagle Cove's proposed use was not compatible with the allowed uses in zoning Districts 2 and 4. Thus,

despite the Board's failure to specifically consider the proposed use as an unclassified or unspecified use under ORDINANCE § 9.20.F., there is no basis to conclude that the Board erred.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.